# COLVILLE

*v.*

# THE AMERICAN SECURITY & TRUST CO.

# NOBLE v. SAME.

WILLS, CONSTRUCTION OF; MISTAKE AND INADVERTENCE; CON-
JECTURES; PATENT AMBIGUITY.

A testatrix having an estate consisting of both real and personal
property and amounting to about $30,000, devised the same to
a trustee to pay over the income to her granddaughter for
life, and provided that upon the death of the granddaughter
the trust should determine, and $5,000 of the estate should be
paid to the Hospital of the University of Pennsylvania; and
all the rest and residue of the estate she devised and be-
queathed to the Home for Incurables at Fordham, N. Y.   On
the same day the will was made the testatrix added a codicil
thereto in which she stated: "I hereby revoke and annul the
bequest therein made by me to the Home for Incurables at
Fordham, N. Y., and I hereby give and bequeath the $5,000
(heretofore in my will bequeathed to said Home for Incura-
bles) to my friend Emeline Colville."   In a suit filed by the
trustee after the death of the granddaughter for the con-
struction of the will and codicil it was *held*:  That in the con-
struction of the will and codicil no conjecture could be
indulged in, but their words would have to be taken as they
stood, after rejecting the words in the codicil in parentheses;
and that therefore the bequest of $5,000 to the Hospital of
the University of Pennsylvania remained unaffected by the
codicil; that the bequest of the rest and residue of the estate
to the Home for Incurables at Fordham, N. Y., was revoked
by the codicil; that out of the rest and residue there was be-
queathed to Emeline Colville $5,000; and that the remainder
of the estate was distributable to the next of kin of the testa-
trix; the Chief Justice *dissenting*.

Nos. 614 and 615.  Submitted December 9, 1896.  Decided January 4, 1897.

HEARING on appeals by several defendants from a de-
cree construing a will and codicil.   *Reversed.*

The COURT in its opinion stated the case as follows:

These are cross-appeals by different defendants in a suit instituted on the equity side of the Supreme Court of the District of Columbia by the appellee, The American Security and Trust Company, as trustee, for the purpose of procuring a judicial construction of the last will and testament of Mrs. Mary Eleanor Ruth, who died in the city of Washington, on June 16, 1892.

The will in question, or, rather the will and a codicil to it, both executed on the same day, June 1, 1892—and it is the codicil rather than the will that gives rise to the difficulty sought to be solved in the present proceedings—are as follows:

"I, Mary Eleanor Ruth, residing in the city of Washington and the District of Columbia, being of sound and disposing mind and memory, do make and publish and declare this to be my last will and testament, hereby revoking and making null and void any and all former wills and codicils by me at any time made.

"First. I direct my executor hereinafter named to first pay out of my estate my funeral expenses and all just debts.

"Second. I give, devise and bequeath all of my estate, real, personal or mixed, whether in possession, reversion or remainder, now acquired or hereafter to be acquired and wheresoever situated, to the American Security and Trust Company of Washington City, District of Columbia, its successors and assigns, in trust nevertheless for the following uses and purposes only, that is to say—

"To invest and reinvest the proceeds of my said estate in its discretion from time to time."

(Here follow directions in regard to the investment of the property and a provision for the application of the whole and entire income to the use of the granddaughter of the testatrix for the term of her natural life, which, as the granddaughter is now dead, and the purpose of the provision has ceased, may be omitted.)

"Third. In the event of the death of my said grand-daughter, Sophia Yuengling Huston, or of the occurrence of the prior contingency for the determination of said trust hereinbefore provided in item two, then the trust hereinbefore created and vested in the 'American Security and Trust Company' shall cease and be determined and so much of my said estate shall thereupon be conveyed and delivered over by said American Security and Trust Company to the Hospital of the University of Pennsylvania as amounts to five thousand dollars, said five thousand dollars to be used by said hospital to endow and forever maintain a first-class perpetual bed in said hospital in the city of Philadelphia, said bed to be in the name and memory of my beloved son Melancthon Love Ruth.

" All the residue and remainder of my said estate of whatever kind after the payment of said five thousand dollars for the establishment of said perpetual bed in said hospital I give, devise and bequeath to the 'Home for Incurables at Fordham, New York city, in the State of New York, its successors and assigns forever, to be used by said 'Home for Incurables' to endow and forever maintain one or more beds in said home in the name and memory of my beloved son Melancthon Love Ruth.

"Fourth. (Appoints guardians for her granddaughter.)

"Fifth. I hereby nominate and appoint the American Security and Trust Company of Washington City, District of Columbia, to be the sole executor of my estate.

"In witness whereof I have hereunto set my hand this first day of June in the year of our Lord eighteen hundred and ninety-two.

(Signed) "MARY E. RUTH."

[ <em>Codicil.</em> ]

"I, Mary Eleanor Ruth, being of sound and disposing mind and memory and understanding, do make and publish this codicil to my last will and testament—I hereby

revoke and annul the bequest therein made by me to the Home for Incurables at Fordham, New York City, in the State of New York, and I hereby give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville, the widow of Samuel Colville, now living in New York City, said bequest being on account of her kindness to my son and myself during his and my illness and my distress.

"In witness whereof I have hereto affixed my name this first day of June in the year of our Lord eighteen hundred and ninety-two, and I in all other things ratify and affirm my said will.                    MARY E. RUTH."

Both the will and the codicil were attested on the same day by the same three witnesses, of whom two at least were members of the bar; and one of these two, it seems to be conceded, was the scribe of both documents which in their use of legal phraseology plainly manifest the presence of professional knowledge in their preparation. The testatrix died two weeks after their execution.

The American Security and Trust Company assumed the executorship of the will; and upon the termination of the executorship it took the property as trustee. On April 4, 1895, by the death on that day of the granddaughter of the testatrix, the trust vested in the company by the will was determined and ceased, and then, a question having arisen as to the proper construction of the codicil, the Trust Company instituted the present suit for the judicial ascertainment of the proper persons to whom it should make distribution of the property in its hands, at that time amounting to about $30,000.

The next of kin of the deceased testatrix, the Hospital of the University of Pennsylvania, the Home for Incurables at Fordham in the city of New York, and Emeline Colville, were made defendants to the bill; and they all filed their answers setting up their respective claims. The Hospital of

the University of Pennsylvania claimed to be entitled to the legacy of five thousand dollars left to it in the will, and maintained that there was nothing in the codicil that would in any manner affect the bequest. The Home for Incurables claimed in its answer to be entitled to the rest and residue of the estate of the deceased testatrix, as provided in the original will; and that the devise and bequest there made were not revoked by the codicil, or were revoked only, if at all, to the extent of five thousand dollars. Mrs. Emeline Colville claimed to be entitled to the whole of the rest and residue of the estate, after the payment of the legacy to the Hospital of the University of Pennsylvania, and not merely to the sum of five thousand dollars specifically mentioned as the amount of the legacy to her. The heirs-at-law and next of kin claimed that the residue of the estate after the payment of the two legacies of five thousand dollars each, one to the Hospital of the University of Pennsylvania, and the other to Mrs. Emeline Colville, vested in them by operation of law, and in pursuance of the statute of distribution of decedent's estates as in case of intestacy.

There was no testimony taken; counsel were all of opinion that, inasmuch as the mistake in the codicil, whatever it was, was a patent one, no testimony was admissible to aid in the solution of the difficulty. So the cause went to hearing in the court below upon the bill and answers; and that court thereupon rendered a decree wherein it was held that the legal effect of the codicil was to revoke the legacy of five thousand dollars previously given in the will to the Hospital of the University of Pennsylvania, and to substitute Mrs. Emeline Colville as the legatee of said sum in the place and stead of said hospital, but not to revoke the bequest of the rest and residue of the estate to the Home for Incurables at Fordham.

From this decree the Hospital of the University of Pennsylvania, Mrs. Colville and the next of kin have all appealed.

*Mr. Edwin Sutherland* for the appellant, Mrs. Colville:

1. In construing a will, the court must give such a construction as to support the intention of the testator, even against strict grammatical rules, and to effectuate his evident intention, words and limitations may be transposed, rejected, or supplied. *Pond* v. *Bergh,* 10 Paige, 140; *Appeal of Merkel,* 109 Pa. 235; *Terry's Appeal,* 102 Pa. 235; *Graham* v. *Graham,* 23 W. Va. 36; *Estate of Wood,* 36 Cal. 75; *Hammond* v. *Ridgeley,* 5 H. & J. 245; *Daniel* v. *Whartenby,* 17 Wall. 639; *Marshall* v. *Hopkins,* 15 East, 309; *Spark* v. *Purnell,* Hob. 75; *Doe* v. *Hicks,* 7 T. R. 437; *Boon* v. *Comforth,* 2 Ves. 279.

2. The question in expounding a will is not what the testator meant, but what is the meaning of the words used by him, and these words must be construed in the ordinary and usual manner, technical rules yielding to the obvious intention of the testator, it being the duty of the court to make a will effective if possible. *Lycan* v. *Miller,* 112 Mo. 548; 4 Mass. 208; 6 Mass. 175; 112 Pa. 543; 1 Sandf. Ch. 357; *Bosley* v. *Bosley's Exrs.,* 14 How. 390; *Burwell* v. *Executors,* 2 How. 560; *Bradley* v. *Packet Co.,* 13 Pet. 89.

3. The law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given. *Patch* v. *White,* 117 U. S. 210; *Lee* v. *Simpson,* 134 U. S. 572; *Hardenburg* v. *Ray,* 151 U. S. 112. Where the intent to make a complete disposition of all the testator's property is manifest, its provisions should be so construed, if they reasonably may be, to carry into effect his general intent. *Given* v. *Hilton,* 95 U. S. 591.

4. It is settled by the authorities that when one undertakes to make a will it will be presumed that his purpose is to dispose of his entire estate; and that when the words of a will fairly carry the whole estate of which he dies seized and possessed, there is no presumption of an intention to die intestate as to any part of his estate. *Hardenburg* v. *Ray,* 151 U. S. 112, and cases cited.

5. Where the description is incorrect, mistaken, or false, the law is well settled that if it can be ascertained what was intended to be bequeathed the instrument will be effectual, the property will pass, and the incorrect parts of the description will be merely rejected and disregarded.

6. The court ought not, without absolute necessity, to embrace the alternative of holding a devise void for uncertainty. Where it is possible to give a meaning, it should be given, that the will of the testator may be operative; and where two or more meanings are presented for consideration the court must be well assured that there is no sort of argument in favor of one view rather than another before it rejects the whole. It is true the heir-at-law shall only be disinherited by clear intention; but if there be ever so little reason in favor of one construction of a devise rather than any other, we are at least sure that this is nearer the intention of the testator than that the whole should be void and the heir let in. *Adams* v. *Jones*, 9 Hare, 485; *Mason* v. *Robinson*, 2 Sim. & S. 295; 6 Man. & Gr. 379.

There cannot be even a momentary contention over the statement that in and by the words used by the testatrix, in the codicil, there was manifested a clear intention to revoke the bequest to the Home for Incurables, and this intention must prevail. *Read* v. *Backhouse*, 2 R. & My, 546; *Pilscher* v. *Hole*, 7 Sim. 208; *Carrington* v. *Payne*, 5 Ves. 423; *Ellis* v. *Bartman*, 25. Beav. 107. That the intention to bequeath what had just been revoked was a concurring and continuing intention with the intention to revoke is self-evident. The intention of the testatrix to bequeath certain property to Emeline Colville, which rendered it necessary for her to revoke the bequest to the Home for Incurables is also apparent. This view receives striking confirmation if we bear in mind what it was which the testatrix revoked; it was not "the five thousand dollars" but "the bequest." If we reject the words "the five thousand dollars," and substitute what was revoked, "the bequest," for the words "the

five thousand dollars" we use the testatrix's own words, and her intention is made clear.

The following authorities, in addition to those cited above, fully sustain the position of the appellant Colville, and refute the position taken by the next of kin and the Home for Incurables: *Estate of Wood,* 36 Cal. 75; *Taylor* v. *Meador,* 66 Ga. 230; *Graham* v. *Graham,* 23 W. Va. 36; *Ferry's Appeal,* 102 Pa. 207; *Wheeler* v. *Withers,* 10 Sim. 505; *Cotton* v. *Stenlake,* 12 East. 515; Redfield on Wills, 454; 2 Williams on Executors, 978.

*Messrs. Webb, Webb & Lindsley* for the appellants, the heirs-at-law and next of kin:

1. The ruling of the court below was erroneous, because it is contrary to the general rule that a will and codicil are to be construed together as one instrument, and are to be reconciled as far as possible, though of course if irreconcilable, the codicil, as the last indication of the testator's mind, must prevail. *Lee* v. *Prindle,* 12 G. & J. 288; *Boyle* v. *Parker,* 4 Md. Ch. 44; Schouler on Wills, Sec. 487; *Crozier* v. *Bray,* 120 N. Y. 375. It is therefore evident, that if any portion of the will is irreconcilable with the codicil, it must be set aside and declared inoperative, and the codicil prevail.

2. The ruling makes for the testatrix a will contrary to her intention expressed in her will. "It is a fundamental principle of law that the intention of the testator is to govern in the construction of a will, but it is the intention expressed by the will, and not otherwise." *Tucker* v. *Seaman's Aid Society,* 7 Met. 188. See also Schouler on Wills, 500, Sec. 466.

But it has been contended, and it was so held in the court below, that the testatrix, in the codicil to her will, showed that her intention was to revoke the legacy, given in her will to the Pennsylvania Hospital, and give it to Mrs. Colville, and not to disturb the legacy given to the Home for Incurables. But this is erroneous:

1st. Because it is allowing a positive provision in a will

to be controlled by a subsequent vague and uncertain one. *Roach* v. *Hayes*, 8 Ves. 590; *Barker* v. *Lea*, 3 Ves. & Bea. 117; *Jones* v. *Colbeck*, 8 Ves. 42; *Parson* v. *Barker*, 18 Ves. 478; *Thackery* v. *Hampson*, 2 Sim. & Stu. 217; *Lord Orford* v. *Churchill*, 3 Ves. & Bea. 67; Redfield on Wills, Vol. I, Ch. 9, 434. "A clear gift cannot be cut down by any subsequent words unless they show an equally clear intention." *Whelan's Est.*, 175 Pa. St. 25; *Kiver* v. *Oldfield*, 4 De G. & J. 30; *Sheetz Appeal*, 82 Pa. St. 213. This rule of law is undoubted, and it seems that the reverse should also be true, that a legacy, which has been clearly and unmistakably revoked and annulled, should need the clearest and most unmistakable language to revive it.

2d. It is also allowing surmise and conjecture to overrule and set aside the clearly expressed wishes and intentions of the testatrix. *Towle* v. *Delano*, 144 Mass. 95; *Grout* v. *Hapgood*, 13 Pick. 164. Courts are not permitted to give effect to the will of the testator contrary to the plain and obvious terms used by him, upon mere conjecture as to his intention. *Wright* v. *Hicks*, 12 Gratt. 155; *Crane* v. *Doty*, 1 Ohio St. 284; *Howard* v. *Peace Society*, 49 Me. 288; *Pickering* v. *Langdon*, 22 Me. 247–249; *Bender* v. *Dietrick*, 7 W. & S. 287; *Hitchcock* v. *Hitchcock*, 35 Pa. St. 397; *Thomas* v. *Thomas*, 6 T. R. 671; *Bane* v. *Wick*, 19 Ohio, 333; 3 Burr. 1634; Schouler on Wills, Sec. 466; *Miller* v. *Travers*, 8 Bingh. 244.

3d. This ruling cannot be sustained upon the ground of mistake. The principle of law is well settled to the contrary. *Box* v. *Barrett*, Law Rep. 3 Eq. 244; *Holmes* v. *Constance*, 12 Ves. Jr. 279; *Hayes' Exr.* v. *Hayes*, 21 N. J. Eq. 265; *Mellish* v. *Mellish*, 4 Ves. 50; 1 Story Eq. Jur., Sec. 180; *Smith* v. *Maitland*, 1 Ves. Jr. 362; *Given* v. *Hilton*, 95 U. S. 594–5.

The court can only find that a mistake has been made from the paper itself, and must not resort to conjecture to change the paper, unless by such change all of the intentions of the testatrix are made clear. The change herein made reads out of the will an unmistakable revocation and

deliberately robs a legatee of a bequest not revoked in terms or by necessary implication. *Courter* v. *Stagg*, 12 C. E. Gr. 305; *Cody* v. *Bunn*, 46 N. J. Eq. 133. A will cannot be corrected by evidence of mistake, so as to strike out the name of the legatee and insert that of another. *Yates* v. *Cole*, 1 Jones Eq. 110; *Fitzpatrick* v. *Fitzpatrick*, 36 Iowa, 674.

Lord Kenyon, in *Lane* v. *Stanhope*, 6 T. R. 352, said: "It is our duty in construing a will to give effect to the devisor's intention so far as we can consistently with the rules of law; not conjecturing, but expounding this from the words used." *Taylor* v. *Taylor*, 47 Md. 297.

3. The general rule that no one is presumed to make a will without meaning to dispose of all his estate by said will, must yield when such construction cannot be implied from the words of the will. *Ramsay* v. *Schelmerdine*, Law Rep. 1 Eq. 129. But against this general rule another and equally fundamental rule in the construction of wills must be recognized here, viz.: "The heirs-at-law shall not be disinherited by conjecture, but only by express words or necessary implication." *Wright* v. *Page*, 10 Wheat. 228; *Allen's Exrs.* v. *Allen*, 18 How. 392; *Bradford* v. *Bradford*, 6 Wharton, 244; Schouler on Wills, Sec. 479; *Brant* v. *Wilson*, 8 Cow. 57; *Hitchcock* v. *Hitchcock*, 35 Pa. St. 397; *Fitch* v. *Weber*, 6 Hare, 145; *Pendleton* v. *Larrabee*, 62 Conn. 393.

*Mr. Henry Wise Garnett* and *Mr. Corcoran Thom* for the appellant, the Hospital of the University of Pennsylvania:

The legacy given by the said last will and testament of Mary E. Ruth to the Home for Incurables at Fordham, New York, is revoked by the codicil to said will. The first part of said codicil is full and complete in itself, and the subsequent uncertain description of said legacy cannot in any way defeat the clear and explicit revocation contained in the first part of said codicil.

2. It has been contended in this case that to hold the legacy to the Home for Incurables as revoked would have

the effect of creating partial intestacy but this result would not follow, as the court has power, where the intention is plain to insert or transpose words in a will or codicil in order to effectuate a clear intention. "Where it is necessary in order to effectuate the testator's manifest intention that words should be transposed the court has the power to do so." *Baker* v. *Pender*, 5 Jones, 351; *Linstead* v. *Green*, 2 Md. 82; *Finley* v. *King*, 3 Pet. 346–383.

3. It is laid down by all books on the subject of the construction and interpretation of wills that the intention of the testator is to govern in the interpretation thereof, but there is also an equally well established rule that where there is a clear and explicit devise in the will, ambiguous or uncertain wording in the codicil will not revoke the provision of the will. *Quincy* v. *Rogers*, 9 Cush. 290; *Johns Hopkins* v. *Pinckney*, 55 Md. 365; Williams on Exrs. (6th Am. Ed.) 220; Jarman on Wills, 176.

4. The court in this case should not hold that the codicil revokes the legacy of the Hospital of the University of Pennsylvania, because the codicil itself does not revoke it. In order for the court so to hold, it would have to insert in the codicil wording which is not there, and it would entirely change the wording and substance of the said codicil. The court cannot interpret the will and codicil according to conjecture, but unless it finds that the intent of the testatrix is clear the codicil must fall.

The court must carry out the intention of the testatrix, as that intention can be ascertained from the will and the codicil, but if the testatrix's intention as contained in the codicil cannot be clearly ascertained, then the codicil is void for uncertainty, leaving the provisions of the will only to be carried out. 2 Redfield on Wills, 285.

*Mr. J. S. Flannery, Mr. George H. Yeaman* and *Mr. George C. Kobbe* for the appellee, the Home for Incurables:

1. The construction placed upon the codicil by the decree

of the court below is a reasonable and proper one, and is in accord with the evident intention of the testatrix. That the primary rule for the construction of wills is to ascertain and carry into effect the intent of the testator is certainly true, and yet it is a rule which, taken by itself, is very often of little or no assistance. It may be said that the intent is the will, provided the will be executed with the formalities required by law, and within the scope and effect allowed by law for testamentary disposition. Therefore, in searching for that intent, resort must usually be had to other rules of construction. Of the rules most applicable to the case in hand are: (1) To find the intent, if possible, within the four corners of the will; (2) to give the will such construction, if possible, that all its provisions may have effect, and (3) if this be not practicable, in the literal terms of the will, then those provisions must fail the rejection of which, for inconsistency, would do the least violence to the general scheme of the will.

Every will must be construed in the light not merely of its special provisions, but to preserve and give effect to the intention of the testator. The intention of the testatrix here, as evidenced by the language of her will, was plainly to provide for her granddaughter as long as she might live, and at the latter's death to have her estate go for the perpetuation of the memory of her deceased son. This, undoubtedly, was the end she had in view, and the scheme of disposition outlined in the will was the means taken to accomplish that end.

The construction of this will contended for by the Home for Incurables, and adopted by the court below, is not only founded upon the soundest principles of common sense, but is sustained by eminent authority. The rule that a later provision in a will controls an earlier provision, upon the ground that it is the last expression of testamentary intent, is one of convenience only. It is not rigid, but yields to the general intent—to the scheme of the will. Where a

bequest is made in clear and unambiguous terms it would be against every principle of construction to permit such a gift to be revoked by doubtful expressions in a codicil. As a general rule, it is said, that in order to revoke a clear devise, the intention to revoke must be as clear as the devise. Williams Exrs. (6th Am. Ed.) 220; *Boseley* v. *Boseley,* 14 How. 395; *Johns Hopkins University* v. *Pinckney,* 55 Md. 363.

In giving construction to a will, all the parts of it should be examined and compared, and the intention of the testator must be ascertained not from a part, but from the whole of the instrument. *Lane* v. *Vick,* 3 How. 464.

Where there are two intents expressed in a will the primary must control the secondary—the general, the particular. *Smith* v. *Bell,* 6 Peters, 84; *Simpers* v. *Simpers,* 15 Md. 180; *Taylor* v. *Watson,* 35 Md. 519; *Jones* v. *Earle,* 1 Gill, 395.

The clear general intent of this will was to provide for the granddaughter of the testatrix as long as she might live, and, upon her death, to perpetuate the memory of the testatrix's deceased son. The particular intent expressed in the codicil is to give a pecuniary legacy to a friend— Mrs. Colville. This particular intent must be controlled by the clear general intent of the will.

The general intention of the testator, although first expressed, will overrule a particular intent. *Pue* v. *Pue,* 1 Md. Ch. 382; *Chase* v. *Lockerman,* 11 Gill & J. 186.

This latter construction is especially favored when the posterior paper is a codicil and is inadequate to the disposition of the entire property, so that the consequence of rejecting the prior document, the will, would be to produce partial intestacy. 1 Jarmon on Wills, 5th Ed. 175.

To adopt any of the theories of construction contended for by the respective appellants would be to make a new and different will for the testatrix.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the appeal of Mrs. Emeline Colville,

we are entirely satisfied that there would be no justification
whatever for any construction of the will and codicil of the
deceased testatrix that would enlarge her legacy beyond the
sum of five thousand dollars specifically bequeathed to her
in the codicil.   If it was the intention of the testatrix to
substitute Mrs. Colville as the residuary legatee of the estate
in the place and stead of the "Home for Incurables," which
is the claim made on her behalf, the rule or maxim so fre-
quently applied in such cases—*voluit sed non dixit*—she
wished it, but she did not say so—is entirely pertinent.
Nowhere, either in the will or codicil, is there the slightest
manifestation of intention on the part of the testatrix to
give more than five thousand dollars to Mrs. Colville.   In-
deed, the argument would be rather plausible that the
legacy left to Mrs. Colville was a specific legacy assumed to
have been previously left to some one else; and that, inas-
much as there was in fact no such previous specific legacy,
therefore she should have nothing.   But it is clear to us
that it was the intention of the testatrix that Mrs. Colville
should have five thousand dollars out of her estate, and that,
under no proper construction of the will and codicil, could
she be held entitled to any more.

   The theory upon which it is sought to support her claim
to be substituted for the Home for Incurables as the legatee
of the rest and residue of the estate, is that otherwise the
testatrix would have died intestate as to a large part of her
estate, and the very undertaking of a person to make a
will creates a strong presumption of a purpose to dispose
of the whole estate.   Undoubtedly the theory is correct
that the undertaking of a person to make a will creates
a presumption of purpose on the part of that person
to dispose of his whole estate.   But the theory is just as
valueless in the present connection as is the theory with
which, on behalf of the heirs-at-law and next of kin, it is
sought to antagonize it, namely, that the heirs-at-law are
not to be disseised without specific words to that effect, and

that every intendment is to be made in their favor—a theory greatly more regarded than the other by the authorities. There are many cases in which the execution of a will is entirely consistent with a purpose of partial intestacy. But even assuming an express and unmistakable purpose to dispose of one's whole estate, such purpose is vain, unless there is an effort to carry it into effect in accordance with law. If one, expressly stating in his will that he therein desires to dispose of his whole and entire estate, and possessing three pieces of property, devises one to A and another to B, but is entirely silent as to the third, and there is no residuary clause that could convey it, it would be idle to argue that such third piece would pass by the will. The theory is properly invoked, not to authorize the courts to make wills for parties or to supply presumed deficiencies in their wills, which they have no right to do, but to aid a testator's imperfect expression of his purpose. If there are two or more possible constructions of the terms of a will, or of the terms of a devise or bequest in a will, it is proper that the courts should adopt that construction, if otherwise reasonable, which would make the testator die testate, rather than intestate. *Given* v. *Hilton,* 95 U. S. 391; *Smith* v. *Bell,* 6 Pet. 68; *Hardenbergh* v. *Ray,* 151 U. S. 112. This is the extent of the doctrine; and it would be a perversion, not an application of it, to use it for the purpose of supplying clauses or expressions in a will, which the testator may have intended to use, but which, as a matter of fact, he did not use, and which there is nothing in the will itself to show that he intended to use. Mere conjecture cannot be permitted to supply the expression of intention.

In the documents before us there is nothing whatever to show any purpose on the part of the testatrix to devise and bequeath the rest and residue of her estate to Mrs. Colville. The bequest to Mrs. Colville was evidently an afterthought, anyhow. It did not enter into the consideration of the testatrix when she was making the will itself. It was no part of any general testamentary scheme or purpose. The

idea that it was the intention of the testatrix to make Mrs. Colville her residuary devisee and legatee is one that is not suggested by anything that is found either ·in the will or codicil, but is the result of the fact that otherwise the testatrix would have died partially intestate. But courts are not allowed to interpolate provisions in a will merely for the purpose of preventing intestacy, either whole or partial.

We are of opinion that, whatever may be the merits of the controversy as between the others who claim to be interested, Mrs. Emeline Colville is entitled only to the sum of five thousand dollars.

2. A more difficult question is presented as between the claims of the Home for Incurables, the Pennsylvania Hospital and the next of kin. By the decree of the court below, the latter are excluded, Mrs. Colville is substituted for the Pennsylvania Hospital, and the Home for Incurables remains entitled to the rest and residue of the estate, as provided in the original will. The construction of the codicil, by which this conclusion is reached, has undoubtedly the merit of interfering least with the scheme of the original will, and of insuring entire testacy on the part of the testatrix; and we are not sure that this is not what the testatrix intended. But our difficulty is that, in order to reach this construction, we must indulge in conjecture which has no foundation in the will, and must nullify the express provisions of the codicil. We must hold that, when the testatrix, in express and specific words, revoked and annulled the bequest made in the will to the Home for Incurables at Fordham, New York City, in the State of New York, she meant and intended to revoke and annul another entirely distinct and different bequest, one to the Hospital of· the University of Pennsylvania. And we must hold that, when immediately afterwards in the codicil she took occasion to refer again to the institution whose legacy she revoked, she spoke of it again as "said Home for Incurables." Now, this seems to us not to be construction of the will and codi-

cil, but rather an attempt to supply its deficiencies and practically to make a will for the testatrix.

It is well settled law that, however clearly it may be shown by testimony beyond all question that, when a testator has said one thing he meant another and a different thing, the courts have no right to attempt to rectify the mistake. Such assumption of authority would be a most dangerous power for them to exercise. This would seem to be the unanimous doctrine of all the authorities; and those which seem to be exceptions to the rule are not in fact exceptions. The most prominent of these latter, perhaps, is the case of *Patch* v. *White*, 117 U. S. 210.

In that case a testator had devised lot 6, in square 403, with the improvements upon it, when he never owned that lot and the lot had no improvements upon it, and when he did own lot 3, in square 406, which did have improvements upon it; and when the scheme of his will required that effect should be given to this devise, and no effect could be given to it except by transfer of the figures, as stated, in accordance with the demonstration of the oral testimony in the case. The court held that here was a case of latent, not of patent, ambiguity, and it said:

"It is settled doctrine that, as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject; as where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. 1 Jarman on Wills, 370; Hawkins on Wills, 9, 10, Where it consists of a misdescription, as before stated, if the misdescription can be struck out, and enough remain in the will to identify the person or thing, the court will deal

with it in that way; or, if it is an obvious mistake, will read it as if corrected. The ambiguity in the latter case consists in the repugnancy between the manifest intent of the will and the misdescription of the donee or the subject of the gift. In such a case, evidence is always admissible to show the condition of the testator's family and estate, and the circumstances by which he was surrounded at the time of making his will. 1 Jarman on Wills, 364, 365; 1 Roper on Legacies, 297, 4th Ed.; 2 Williams on Executors, 988, 1032. Mr. Williams, afterwards Mr. Justice Williams, says: ' Where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake shall not disappoint the bequest. The error may be rectified, . . . 1st. By the context of the will; 2d. To a certain extent by parol evidence. . . . A court may inquire into every material fact relating to the person who claims to be interested under the will, and to the circumstances of the testator and of his family and affairs, for the purpose of enabling the court to identify the person intended by the testator.' (Pages 988, 989.) Again, he says, on page 1032: 'Mistakes in the description of legacies, like those in the description of legatees, may be rectified by reference to the terms of the gift, and evidence of extrinsic circumstances, taken together. The error of the testator, says Swinburne, in the proper name of the thing bequeathed, doth not hurt the validity of the legacy, so that the body or substance of the thing bequeathed is certain.'"

This case of *Patch* v. *White*, as will be perceived, was one of latent, and not of patent ambiguity, as the present case is conceded to be; and might, therefore, be regarded as wholly inapplicable. But we have quoted from it to show the limits within which ambiguity may be removed, or mistake rectified, in the construction of wills; and we find from the doctrine of that case that we have no means of rectifying

the palpable mistake that was committed in the present instance.

In the codicil before us we find two distinct and practically independent testamentary dispositions. First, we have a revocation and annulment in positive and unmistakable terms of a bequest in the will to the Home for Incurables at Fordham, New York City, in the State of New York; and, secondly, we have a bequest of five thousand dollars to Mrs. Emeline Colville, of the city of New York. Coupled with this latter provision are the terms which cause all the difficulty in the case. The expression is: ".I give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville," &c. Now there was no such sum of five thousand dollars bequeathed in the will to the Home for Incurables. There was such a sum bequeathed to the Hospital of the University of Pennsylvania, while to the Home for Incurables there was a devise and bequest of all the rest and residue of the estate.

It matters not now to inquire whether the mistake was that of the testatrix herself or of the scribe of the will. Nor does it matter that the latter appears in these proceedings advocating the claims of the Hospital of the University of Pennsylvania. What is of consequence is to determine whether we can rectify a mistake which is palpable, and how it may be rectified.

The first of the two testamentary dispositions of the codicil, if standing alone, would present no difficulty. It is clear, precise, explicit, and unmistakable, with no element of ambiguity, either latent or patent. It nullifies in positive terms a bequest made in the will; and it is of no consequence that it purports only to revoke and annul a bequest, when the will purports to devise realty as well as to bequeath personal property; for the will directs the trustee to convert the real estate into personalty, which was actually done, and all that the Home for Incurables would take would be per-

sonalty. Such a revocation could no more be defeated by proof of mistake of the donee than could a legacy in the will by similar proof. It would not be competent for parties to show, for instance, that the legacy of five thousand dollars was intended for the Home for Incurables, while the Hospital of the University of Pennsylvania was intended to be the residuary legatee. And so, when the codicil revoked the one legacy, it is not competent for parties to show by extraneous evidence that it was the other legacy that was intended to be revoked. If language is capable of meaning, the terms of this first provision of the codicil are beyond all question; and they should be taken to mean precisely what they import, a revocation of the bequest made in the will of the rest and residue of the estate to the Home for Incurables at Fordham, in the city of New York.

And with respect to the second of these two testamentary dispositions, it is equally clear and beyond all question that there was a sum of five thousand dollars intended to be left to Mrs. Emeline Colville. In accordance with the doctrine in the case of *Patch* v. *White*, which is the doctrine of reason, that intention should not be defeated upon the ground that the testatrix erroneously stated that this sum had been left in the will to the Home for Incurables. The rule of *mala descriptio non nocet,* to which effect is sought to be given in the case of *Patch* v. *White,* is equally applicable here as there. And we believe that no one claims that Mrs. Colville should be deprived of her legacy of five thousand dollars by reason of this erroneous statement made in connection with it.

So that, here we have two distinct testamentary dispositions, having in their terms no necessary connection with each other, from the first of which, when considered alone, all suspicion even of ambiguity is absent, and to the second of which full force and effect may be given by the disregard of a recital or collateral statement not at all necessary to the validity of the bequest and without which the bequest would be equally or even more effective. And we are asked, by

the combination of the two dispositions, by the connection of the recital in the second disposition with the prior unequivocal disposition, and by the fact that no legacy of five thousand dollars had been left to any one but the Hospital of the University of Pennsylvania, therefore to hold that it was this legacy, and none other, that was intended to be revoked. This may have been the intention of the testatrix; but it is mere conjecture. Other conjectures are equally available: as, for instance, that it was her intention to revoke both of the bequests in the will—to revoke absolutely the residuary bequest to the Home for Incurables, and to substitute Mrs. Colville as the beneficiary of the other bequest in the place of the Hospital of the University of Pennsylvania. But when we once embark on the boundless sea of conjecture, we infringe upon the inexorable rule that courts must not make wills for parties, and are confined merely to the work of construction of the wills that are brought before them.

We give effect to each and every provision of the codicil and to the will as an entirety by rejecting as surplusage the erroneous recital in the second clause of the codicil, which is no more than a recital and is not essential to the integrity of the instrument as a testamentary disposition. If thereby it results that the testatrix died intestate as to the rest and residue of her estate, that is no more than would result in any case where a testator, intending to dispose of his estate, has failed to use apt terms for the purpose, or has not otherwise complied with the requirements prescribed by law to effect his purpose. And if this conclusion also fails to give effect to the real intention of the testatrix, whatever that may have been, we can only say again that the testatrix has failed so to comply with the requirements of law as to enable the courts to give effect to her intention. It would be difficult in any view that we might take of this case to find any controlling purpose or guiding intention on the part of the testatrix, inasmuch as the fact that before the

ink was dry with which her original will was written, she radically changed her mind in regard to the disposition of her property, is sufficient to raise a doubt whether she had in fact any well defined purpose in regard to such disposition; and were we to indulge in conjecture, we would feel no assurance in any conjecture that we might adopt that we had found the true intent and purpose of the testatrix. We deem it most proper, therefore, to indulge in no conjecture; to take the words of this will and codicil as they stand; and only to reject as unnecessary one phrase which is in fact unnecessary to the integrity of the will and codicil.

Entertaining these views, we must hold that there was error in the decision of the court below; and that it is the true legal intent and meaning of the will and codicil, that the bequest of five thousand dollars to the Hospital of the University of Pennsylvania remains intact and unaffected by the codicil; that the bequest of the rest and residue of the estate to the Home for Incurables at Fordham, in the city of New York, was, and is revoked by the codicil; that out of this rest and residue there is bequeathed to Mrs. Emeline Colville the sum of five thousand dollars; and that the remainder of the estate is distributable to the next of kin in accordance with the provisions of the Statute of Distributions.

The cause will be remanded to the Supreme Court of the District of Columbia, with directions *to vacate its decree heretofore rendered therein, and to enter a decree in accordance with this opinion, and for such further proceedings, if any, as may be just and proper in the premises. The costs of this appeal to be paid out of the fund. And it is so ordered.*

Mr. Chief Justice ALVEY dissenting:

It is always with diffidence and regret that I feel myself constrained to dissent from the opinion of my brothers; but in this case I cannot do otherwise, in justice to a settled conviction, than dissent from the construction adopted by them of the will and codicil of the late Mrs. Ruth. I had

a very decided opinion at the hearing that the decree of the court below ought to be affirmed, and further reflection has not changed that opinion, but has strongly confirmed me in the conviction of its correctness.   I shall not undertake, by any extended argument, to support my opinion, but shall briefly state the grounds upon which that opinion is founded. To do this it is necessary to refer to the terms and provisions of both will and codicil.

The testatrix had an estate consisting of both real and personal property, amounting to something more than $30,000, and which she, by her will dated the first day of June, 1892, effectually devised and bequeathed in terms that admitted of no doubt or question.  The will furnishes intrinsic evidence of a matured scheme of disposition.  She devised and bequeathed her entire estate in trust for a limited time to serve a particular purpose, that was to raise an income to be applied to the support and maintenance of her granddaughter for and during the life of the latter.   The granddaughter died about three years after the death of the testatrix.   After the purposes of the trust were served, she then provided that there should be delivered by the trustee to the Hospital of the University of Pennsylvania the sum of $5,000, which sum "to be used by said hospital to endow and forever maintain a first-class perpetual bed in said hospital in the city of Philadelphia, said bed to be in the name and memory of my beloved son, Melancthon Love Ruth." She then provided by the will that—

"All the residue and remainder of my said estate, of whatever kind, after the payment of said five thousand dollars for the establishment of said perpetual bed in said hospital, I give, devise and bequeath to the 'Home for Incurables,' at Fordham, New York city, in the State of New York, its successors and assigns, forever, to be used by said 'Home for Incurables' to endow and forever maintain one or more beds in said home in the name and memory of my beloved son, Melancthon Love Ruth."

On the same day of the making of this will, and it may have been immediately thereafter, the testatrix added a codicil, not, as it would appear, to change the whole scheme of her will in respect to the entire residue of her estate, but in respect to the pecuniary legacy of a defined amount that had been disposed of in her will, and which she found necessary to recall to enable her to bestow a bounty upon a friend in recognition of kindness that she had received. By this brief codicil she declared: "I hereby revoke and annul *the bequest* therein [referring to her will] made by me to the Home for Incurables at Fordham, New York city, in the State of New York, and I hereby give and bequeath *the* five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville, the widow of Samuel Colville, now living in New York city, said bequest being on account of her kindness to my son and myself during his and my illness, and my distress."

It is conceded upon all sides that it was not the intention of Mrs. Ruth to die intestate as to any portion of her estate and no construction should be adopted that will produce intestacy as to any part of the estate, if such construction can be avoided. That there was a mistake made by the draftsman of this codicil is conceded by all concerned, and the question is, how is that mistake to affect the will? In the first place, there was no pecuniary legacy given as such by the will to the Home for Incurables, and it is conceded that it was not intended to give to Mrs. Colville more than the $5,000 mentioned. There was, as we have seen, a pecuniary legacy of $5,000 given by the will to the Hospital of the University of Pennsylvania, and if we conclude that the draftsman of the codicil, by momentary inadvertence, confounded the name of one institution with the other and inserted the name and description of the Home for Incurables instead of the Hospital of the University, all the difficulty is removed. It is very clear, to my mind at least, that the legacy given by the will to the University Hos-

pital was the legacy that was intended to be revoked in order that a legacy of the same amount might be given to Mrs. Colville. It cannot be supposed that within the short time that had intervened between the execution of the will and the making of the codicil that the testatrix had deter. mined to destroy the whole scheme of her will with respect to the bulk of her estate, consisting of both real and personal property, for the purpose simply of raising a pecuniary legacy of $5,000. If the legacy of $5,000 to Mrs. Colville had been intended to be paid out of the residue of the estate, it would not have been necessary or proper to revoke the whole residuary devise and bequest made by the will, but the proper mode of making such pecuniary bequest in the codicil would have been simply to direct the amount to be paid out of the residue. In disposing of the residue of her estate the testatrix used apt and appropriate legal terms to transfer both real and personal property, of which the residue was composed; but in the revocation in the codicil the terms employed have reference to a particular pecuniary legacy only that had been bequeathed by the will. The codicil should be read in subordination to the general scheme and plan of the will, unless the terms employed be so plain and unmistakable that no doubt whatever could exist, as to the real intention of the testatrix. Here it is admitted in the opinion of the majority of the court that grave doubt does exist, and in such case it is better, and indeed it is the necessary legal consequence, that the codicil should fail of effect, rather than that the intention of the testatrix in respect of the principal part of her estate should be defeated. And if the conceded mistake in the codicil cannot be overcome and corrected by construction, as I think it can, then I should say that the codicil should fall rather than the will be defeated and the testatrix be made to die intestate, as to the larger portion of her estate. The testatrix, after the payment of the $5,000 legacy to the Hospital of the University, devoted the entire residue of her estate to aid in

the support of a most humane and worthy charity; and I cannot believe for a moment, upon any fair construction of the will and codicil, that it was the intention of the testatrix to revoke that residuary devise and bequest, in order to raise the $5,000 for Mrs. Colville. The terms of revocation employed in the codicil, according to my understanding and construction of them, relate simply and exclusively to the pecuniary legacy of $5,000 given by the will to the University Hospital, and that Mrs. Colville was intended to be substituted to that legacy, and to no other part of the estate.

In my opinion, the decree appealed from ought to be affirmed.

Appeals in these cases were taken to the Supreme Court of the United States.